USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/24/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JULIE BARBA,

                                   Plaintiff,

                -v-

ALLIANZ GLOBAL RISKS US
INSURANCE COMPANY,

                                   Defendant.

------------------------------------------------------------------X

16 Civ. 2673 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

      This decision resolves a dispute over insurance coverage. Plaintiff Julie Barba ("Barba"), a survivor of a helicopter crash on a lake in Arizona in December 2012, sues Allianz Global Risks US Insurance Company ("Allianz") for breach of contract and breach of the duty of good faith and fair dealing. Barba is the assignee of an aviation insurance policy provided by Allianz to the owners of the helicopter that crashed. Barba claims that Allianz has breached its duty under the insurance policy to indemnify and defend the owners of the helicopter for their liability arising out of the 2012 crash.

      Allianz now moves to dismiss Barba's Amended Complaint for failure to state a claim. For the reasons that follow, Allianz's motion is granted.

## I. Background

### A. Factual Background[1]

#### 1. The Helicopter Crash and Barba's Personal Injury Lawsuit

This action arises out of a helicopter crash on December 7, 2012 at Lake Roosevelt in Arizona. Am. Compl. ¶¶ 17–20. Barba was one of two passengers onboard a Robinson R 4411 helicopter, FAA Registration Number N557AC (the "Subject Helicopter"), leased and operated by Sky Blue Helicopters, Inc. ("Sky Blue"), and piloted by Sky Blue's owner, Frederick G. Cleeves ("Cleeves"). *Id.* ¶¶ 14, 18. Allegedly due to his own recklessness, Cleeves lost control of the Subject Helicopter, which plummeted into Lake Roosevelt, broke into pieces, and sank to the bottom of the lake. *Id.* ¶ 19. Remarkably, no occupant of the Subject Helicopter was killed. However, Barba was seriously injured, hospitalized for 12 days, and forced to undergo multiple surgeries for her wounds. *Id.* ¶ 20.

After the crash, Barba brought a personal injury lawsuit (the "Underlying Action") against Pollux Aviation, Inc. ("Pollux"), the owner and lessor of the Subject Helicopter, and Pollux's president, Larry T. Larrivee ("Larrivee"), in Maricopa County, Arizona. (Sky Blue had filed for bankruptcy shortly after the crash. Dkt. 16 at 4.) Barba's lawsuit alleged that Pollux and Larrivee had been "negligent in entrusting the Subject Helicopter to [Sky Blue and Cleeves], who had a history of prior helicopter crashes." *Id.* ¶ 22. Barba's lawsuit also alleged that Pollux and Larrivee—by nature of their arrangement with Cleeves—had "entered into a joint venture

---

[1] The facts related herein are drawn primarily from Barba's Amended Complaint, Dkt. 2 ("Am. Compl."), and the attached exhibits. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). The Court accepts all factual allegations in the Amended Complaint as true, drawing all reasonable inferences in Barba's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

with Cleeves, and that Pollux and Larrivee were therefore vicariously liable for [Cleeves's] negligence and recklessness." *Id.* ¶ 23.

### 2.   **Pollux's Insurance Policy With Allianz**

Allianz, a California corporation, is an insurance company. *Id.* ¶ 2. Pollux and Larrivee had secured an Aviation Commercial General Liability Policy from Allianz, which covered the period between November 6, 2012, and November 6, 2016. *Id.* ¶¶ 9–10; Dkt. 11, Ex. 1 (the "Policy").

Three provisions of the Policy are relevant here. First, the Policy provided coverage for liability arising out of "aviation operations," defined to include:

> all operations arising from the ownership, maintenance or use of locations for aviation activities including that portion of roads or other accesses that adjoin these locations. **Aviation operations** include all operations necessary or incidental to aviation activities.

Policy at 2 (bolded emphasis in original).

Second, the Policy contained an "Owned Aircraft" exclusion clause, which stated, in pertinent part:

> **g. Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use or entrustment to others of any **aircraft, auto**, watercraft owned or operated by or leased, rented, or loaned to any Insured. Use includes operation and **loading or unloading** and with respect to **aircraft**, operated by also includes operation on behalf of any Insured. This exclusion applies even if the claims against any Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the **occurrence** which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any **aircraft, auto** or watercraft that is owned or operated by or leased, rented or loaned to any Insured.

*Id.* at 7 (bolded emphases in original).

Third, the Policy contained a "Separation of Insureds" provision, which stated, in pertinent part, that:

> This insurance afforded under the liability coverage applies separately to each Insured against whom a claim is made or suit is brought, but the inclusion herein of more than one Insured shall not operate to increase the applicable limits of the Company's liability.

3

*Id.* at 20.

### 3. Allianz's Disclaimer and the Assignment to Barba

On April 16, 2014, after the Underlying Action was filed, Allianz's counsel notified Pollux and Larrivee that Allianz would not provide coverage or indemnity under the Policy for liability arising out of the Subject Helicopter crash. Am. Compl. ¶¶ 26–28. Allianz relied, *inter alia*, on the Owned Aircraft exclusion provision to justify its position with regard to the coverage. *Id.*

On February 3, 2016, the parties to the Underlying Action (Barba, Pollux, and Larrivee) entered into a settlement agreement (the "Settlement Agreement"). The Settlement Agreement called for a stipulated good faith judgment of $1 million in Barba's favor. *Id.* ¶¶ 32–33. However, Barba agreed "not to take any action of any kind to collect any part of the judgment from Pollux or Larrivee"; instead, she committed to "attempt to recover and collect the Settlement Judgment and/or any such Judgment solely and exclusively against Allianz." *Id.* ¶ 37.[2] The Settlement Agreement assigned to Barba Pollux and Larrivee's rights against Allianz, specifically:

> all of the Pollux Defendants' [Pollux's and Larrivee's] rights, claims, and causes of action against Allianz relating to or arising out of the Policy and/or any other applicable insurance policy or policies (collectively, the "Policies") in connection with the [Underlying Action], including but not limited to, all statutory rights, contractual rights, and rights arising in tort or equity (including but not limited to bad faith, waiver or estoppel), relating to Allianz's duties to defend the Pollux Defendants [Pollux and Larrivee] in the [Underlying Action], to indemnify the Pollux Defendants [Pollux and Larrivee] for any judgment against them in the [Underlying Action], and to settle the [Underlying Action] on behalf of the Pollux Defendants [Pollux and Larrivee].

---

[2] This type of agreement is known as a "*Dameron* agreement," after *Dameron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (Ariz. 1969). No party contends here that such an agreement is unenforceable against Allianz under Alaska law.

4

*Id.* ¶ 36.

Pursuant to the Settlement Agreement, on February 19, 2016, Judge Patricia Starr of the Maricopa County Superior Court entered a judgment in Barba's favor against Pollux and Larrivee, jointly and severally (the "Judgment"). The Judgment is in the amount of $1 million, plus interest at the "statutory rate" until the Judgment is paid. *Id.* ¶ 39.

### B. Procedural History of this Case

On April 11, 2016, Barba filed the original Complaint. Dkt. 1. On April 18, 2016, Barba filed the Amended Complaint. Dkt. 5. It brings claims for (1) breach of contract/wrongful denial of coverage; and (2) breach of the duty of good faith and fair dealing. Am. Compl. ¶¶ 40–53. It seeks (1) declaratory relief; (2) damages; and (3) attorneys' fees and costs. *Id.* at 11–12.

On July 20, 2016, Allianz filed a motion to dismiss the Amended Complaint, Dkt. 10, along with a memorandum of law, Dkt. 12 ("Def. Br."), and an affidavit by its counsel, Dkt. 11, in support. Allianz argues that, as a matter of law, it does not owe coverage to Pollux and Larrivee in connection with the Helicopter Crash that injured Barba. On August 24, 2016, Barba filed a brief in opposition. Dkt. 16 ("Pl. Br."). On September 7, 2016, Allianz replied. Dkt. 19 ("Def. Reply Br.").

## II. Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent

with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) (internal quotation marks omitted)). However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[R]ather, the complaint's *[f]actual* allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal quotation marks omitted) (emphasis in *Arista Records*). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

### III.   Discussion

#### A.   Choice of Law

At the threshold, the Court must determine which state's substantive law applies to Barba's claims.

A federal court sitting in diversity must apply the substantive law of the state in which it sits, including that state's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Valley Juice Ltd. v. Evian Waters of Fr., Inc.*, 87 F.3d 604, 607 (2d Cir. 1996). "New York courts seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute." *Brink's Ltd. v. S. African Airways*, 93 F.3d 1022,

6

1030 (2d Cir. 1996) (quoting *Babcock v. Jackson,* 12 N.Y.2d 473, 481–82 (N.Y. 1963)); *see also Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997).

In cases involving insurance contracts, "New York courts have looked principally to the following factors: [1] the location of the insured risk; [2] the insured's principal place of business; [3] where the policy was issued and delivered; [4] the location of the broker or agent placing the policy; [5] where the premiums were paid; and [6] the insurer's place of business." *Olin Corp. v. Ins. Co. of N. America,* 743 F. Supp. 1044, 1048–49 (S.D.N.Y. 1990), *aff'd,* 929 F.2d 62 (2d Cir. 1991); *see also Seidel v. Houston Cas. Co.*, 375 F. Supp. 2d 211, 220 (S.D.N.Y. 2005); *Am. Nat'l Fire Ins. Co. v. Mirasco. Inc.,* 143 F. Supp. 2d 372, 378–79 (S.D.N.Y. 2001). Of these, the most important is "the state which the parties understood was to be the principal location of the insured risk." *Seidel*, 375 F. Supp. 2d at 220 (internal quotation marks and citations omitted). However, where "the insured's interests include a 'wide geographical range,' New York courts have applied the law of the state where the policies were executed, issued and brokered, and where the insured had their principal place of business." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 383 (2d Cir. 2006) (internal quotation marks and citations omitted) (collecting cases). And, "[w]here liability insurance policies cover[] multistate risks . . . New York courts have regard[ed] the state of the insured's domicile to be a proxy for the principal location of the insured risk." *Lapolla Indus., Inc. v. Aspen Specialty Ins. Co.*, 566 F. App'x 95, 97 (2d Cir. 2014) (internal quotation marks and citations omitted) (collecting cases); *see also Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 36 A.D.3d 17, 37 (N.Y. 2006), *aff'd on the opinion below,* 876 N.E.2d 500 (2007).

Here, each party identifies two states whose substantive law it contends controls: Barba argues for Alaska and California; Allianz argues for Alaska and Arizona. *See* Pl. Br. at 8–9; Def.

Br. at 5–6.[3]  As might be expected, the correct answer is Alaska, the one state on which the parties agree.  Pollux, the named insured under the Policy, has its principal place of business in Wasilla, Alaska, and Larrivee, also covered under the policy, is an Alaska resident who signed the Policy agreement in Alaska, where he also conducted most of his helicopter business.  Pl. Br. at 9.  Barba argues for California because Allianz is located there, but no other facts favor California.  For its part, Allianz argues for Arizona because the helicopter accident at issue occurred there, but the Policy's construction is not determined on an accident-by-accident basis, and Arizona was only one state among a number in which, at the time the Policy was negotiated, Pollux and Larrivee leased helicopters.

### B.     Breach of Contract Claim

Barba's breach of contract claim is that Allianz was obliged under the Policy to defend Larrivee "against any suit seeking damages for bodily injury resulting from aviation operations," and that Allianz failed to do so.  Am. Compl. ¶¶ 42–44.  Allianz counters that it was not obliged to do so because, *inter alia,* under the Owner Aircraft exclusion, any liability arising out of the use of the Subject Helicopter, which was owned by Pollux and leased to Sky Blue, was outside the Policy's scope.  Allianz moves to dismiss based on that exclusion, arguing that it relieved Allianz of its obligation to defend, and ultimately to indemnify, Larrivee for any liability he incurred as a result of the crash of the Subject Helicopter.  Def. Br. at 7–14.

---

[3] That the parties each alternatively advocate for another state appears to reflect that those states have different case law regarding "separation of insureds" provisions in insurance policies, with California's reading being more plaintiff-friendly and Arizona's being less so. (Alaska case law is silent on the salient point.) *See* pp. 12–15, *infra.* As discussed below, even assuming that California law applied, the case authority on which Barba relies is inapposite, and Barba's bid for coverage would still very likely fail.

Viewing the issue solely within the four corners of the Owned Aircraft exclusion, Allianz would—undeniably—be correct that any claims against Pollux and Larrivee in connection with the December 2012 crash of the Subject Helicopter would be excluded.

As to claims against Pollux, the exclusion could not apply more clearly to preclude coverage for such claims. The Owned Aircraft exclusion, in categorical terms, excludes "any bodily injury . . . arising out of the . . . use or entrustment to others of any aircraft . . . owned . . . by . . . any Insured." Policy at 7 (emphases removed). And the exclusion applies "even if the claims against any Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured [based on the Insured's] entrustment to others [of such an aircraft]." *Id.* Pollux, as the owner of the aircraft and of the entity that entrusted it to Sky Blue and Cleeves, falls squarely within this exclusion.

As for claims against Pollux's president, Larrivee, they too are excluded under the "Owned Aircraft" exclusion provision as a result of Pollux's exclusion: Even though Larrivee (unlike Pollux) may not qualify as an "owner" of the Subject Helicopter so as himself to trigger the Owned Aircraft exclusion, under that exclusion, "any" bodily injury claims arising from the entrustment of the aircraft by "*any insured*" are expressly excluded from Allianz's coverage. *Id.*[4]

Barba admits that the Owned Aircraft exclusion applies to, and excludes, claims against Pollux. Pl. Br. at 1 ("Barba does not dispute that Pollux Aviation, Ltd. is excluded under the exclusion clause at issue . . ."). And, as she implicitly acknowledges, but for the Separation of Insureds Clause, the text of that exclusion would exclude her claims against Larrivee, because

---

[4] The Court has no occasion on this motion to resolve whether Larrivee qualifies as an owner. While conceivably the facts might support such an argument, on the motion to dismiss, the parties have litigated solely whether claims against Larrivee are excluded under the Owned Aircraft Exclusion based on the undisputed fact that the entrustment of the Subject Helicopter to Sky Blue and Cleeves was by owner Pollux, also an insured.

9

her bodily injury claims arise from the entrustment of the Subject Helicopter to "any insured," *i.e.*, owner Pollux. *See* Policy at 7. However, Barba argues, the Separation of Insureds clause requires a different result. Because that clause requires that the Policy be "applied separately to each Insured against whom a claim is made," she argues, it renders the Owned Aircraft exclusion ambiguous, to the extent that it would bar her claims against Larrivee based on owner Pollux's conduct. Pl. Br. at 16–19. Barba asks the Court instead to construe the Policy in the light most favorable to the insured, and to give effect, as Alaska law directs in cases of textually ambiguous policy terms, to Larrivee's "reasonable expectations," which, she claims, would have been that claims against him were covered even if claims against Pollux were not. *Id.*

Allianz takes the opposite view. It argues that the Separation of Insureds clause creates no ambiguity because the Owned Aircraft exclusion clearly excludes coverage for liability for both Larrivee and Pollux arising out of the latter's ownership and lease of the Subject Helicopter. Because the text of that exclusion is unambiguous, Allianz argues, there is no occasion here to apply the canon that ambiguous insurance policy terms are construed in favor of the insured, or to consider what Larrivee's "reasonable expectations" might have been. *See* Def. Br. at 7–14.

The Court therefore examines the interplay between these two provisions, applying tenets of construction used in Alaska with regard to insurance policy terms. Under such law, a policy's language, where plain, ordinarily controls: "A court cannot and should not do violence to the plain terms of a contract by artificially creating ambiguity where none exists." *Ness v. Nat'l Indem. Co. of Neb.*, 247 F. Supp. 944, 947 (D. Alaska 1965). "In situations in which reasonable interpretation favors the insurer, and any other would be strained and tenuous, no compulsion exists to torture or twist the language of the contract." *Id.* As the Alaska Supreme Court has put the point: "The mere fact that the parties disagree about the proper interpretation of the contract

10

does not mean that the contract is ambiguous." *Nelson v. Progressive Cas. Ins. Co.*, 162 P.3d 1228, 1234 (Alaska 2007).[5]

In cases where policy language is ambiguous, Alaska courts "construe[] [the policies] in such a way as to honor the reasonable expectations of a layperson seeking coverage," such that "[a]mbiguities will be construed most favorably to the insured." *United Servs. Auto. Ass'n v. Neary*, 307 P.3d 907, 910 (Alaska 2013). Under Alaska law, "[p]olicy language is ambiguous when it is susceptible to two or more [objectively] reasonable interpretations." *Id.* However, "ambiguities only exist when there are two or more reasonable interpretations of particular policy language." *State Farm Mut. Auto. Ins. Co. v. Houle*, 269 P.3d 654, 658 (Alaska 2011) (quoting *State Farm Mut. Auto. Ins. Co. v. Dowdy*, 192 P.3d 994, 997 (Alaska 2008)); *see also Nelson v. Progressive Cas. Ins. Co.*, 162 P.3d 1228, 1234 (Alaska 2007) ("[O]nly where inconsistent, but reasonable, interpretations of the contract are possible will ambiguity be found").

---

[5] To be sure, Alaska law does allow for overriding a policy's plain language in the rare instance where doing so is "the only way to effectuate the insureds' objectively reasonable expectations, even though painstaking study of the policy provisions would have negated those expectations." *Neary*, 307 P.3d at 910 (internal quotation marks and citations omitted) (declining to override policy language where objectively reasonable expectations of the insured—as revealed by language of the disputed provisions, other policy language, and relevant extrinsic evidence—did not support overriding policy language, which was "broad in excluding coverage"); *see also Devine v. Great Divide Ins. Co.*, 350 P.3d 782, 786 (Alaska 2005); *West. v. Umialik Ins. Co.*, 8 P.3d 1135, 1138 (Alaska 2000); *Houle*, 269 P.3d at 654; *Nelson*, 162 P.3d at 1234; *O'Neill Investigations, Inc. v. Illinois Emp. Ins. of Wausau*, 636 P.2d 1170, 1177 (Alaska 1981) (finding that, in cases of clear policy language, the "reasonable expectations" test only applies when there is severely unequal bargaining power between the parties to an insurance contract, such that it is a contract of "adhesion"). Barba does not, however, contend that this case implicates that principle; she instead argues that this is a case of policy ambiguity, which must be construed to favor the insured. Notably, the Amended Complaint does not recite any relevant extrinsic evidence bearing on the reasonable expectations of the insured; and as to policy language, Barba relies only on the Separation of Insured provision as support for finding claims against Larrivee covered.

11

Applying those principles, Barba argues that the Separation of Insureds clause renders the Owned Aircraft exclusion ambiguous, to the extent that its "any insured" clause otherwise would exclude coverage as to one insured based on ownership of the leased aircraft by another insured. Pl. Br. at 19. Barba claims that, in light of the Separation of Insureds clause, however, the Owned Aircraft exclusion can plausibly be read, in the instance of ownership of the Subject Helicopter by one of two insureds, either (1) to exclude coverage to both insureds (here, Pollux and Larrivee), or (2) only the owner-insured (Pollux). *Id.* This ambiguity, Barba urges, should be construed to favor coverage of her claims against Larrivee, in accord with Alaska law favoring the insured in cases of ambiguity.

Barba does not cite any on-point Alaska law as to this problem. And there is no case law in Alaska squarely addressing the interplay between a Separation of Insureds clause and an exclusion along the lines of that here, which excludes claims against one insured in the event that claims against "any insured" are excluded. Courts in other states, however, have had occasion to apply Separation of Insureds clauses to variously worded exclusions, yielding a range of outcomes as to when such clauses give rise to ambiguity. Barba seizes on perhaps the most favorable strand of such case law, from California. In particular, she relies on *Minkler v. Safeco Ins. Co. of America*, 232 P.3d 612, 614 (Cal. 2010), in which the California Supreme Court held that:

> Applying California principles of insurance policy interpretation, we now conclude that an exclusion of coverage for the intentional acts of "an insured," read in conjunction with a severability or "separate insurance" clause like the one at issue here, creates an ambiguity which must be construed in favor of coverage that a lay policyholder would reasonably expect.

12

*Minkler*, 232 P.3d at 614. Barba urges the Court to find that the Alaska Supreme Court would follow *Minkler*, because, she argues, Alaska's law would "likely" be the same or more favorable to insureds as California's.

The most apposite decision in Alaska, *United Services Auto Association v. Neary*, however, casts doubt on that Barba's argument. The issue in *Neary* was different: whether the number of insureds affects an explicit policy limit. The Alaska Supreme Court held that it did not, reasoning that while policy ambiguities should be construed to favor the insured, the language of the policy at issue was clear and unambiguous. 307 P.3d at 910–11. In the course of its discussion, however, the Alaska Supreme Court, speaking more broadly, "recognize[d] that some exclusions are specifically worded such that their application to any insured excludes coverage for all insureds." *Id.* at 912. The Alaska Supreme Court held, however, that it did not need to decide the issue of "the effect of severability clauses in such circumstances." *Id.* at 912. But, it noted, "[t]he majority of courts hold . . . that the existence of a severability clause does not affect a clearly worded exclusion." *Id.* at 912 (quoting *Argent v. Brady,* 386 N. J. Super. 343, 901 A.2d 419, 423–28 (N.J. Super. App. Div. 2006) (collecting cases)). The logic of this analysis favors Allianz here: The Owned Aircraft exclusion, as noted, is clear and unambiguous. The discussion in *Neary* suggests that the Alaska Supreme Court would likely not treat a severability clause like the Separation of Insureds clause as making such a clearly worded exclusion as exists in the Owned Aircraft exclusion clause ambiguous.

Significant, too, the out-of-state cases to consider the interplay between such a clause and a policy exclusion have closely analyzed the precise text of the exclusion at issue. Where, as in *Minkler*, coverage was excluded for all insureds based on the exclusion of "an insured," there is indeed a split of authority: Some cases, like *Minkler*, have found that the interplay between such

text and a Separation of Insureds clause created ambiguity, and construed it to favor the insured. *See, e.g., Minkler,* 232 P.3d at 614 (such an exclusion, "read in conjunction with a [separation of insureds] clause," "create[d] an ambiguity which must be construed in favor of coverage that a lay policyholder would reasonably expect"); *see also, e.g., EMCASCO Ins. Co. v. Diedrich* 394 F.3d 1091, 1098 (8th Cir. 2005); *Catholic Diocese of Dodge City v. Raymer* 840 P.2d 456, 459–462 (Kan. 1992). Others have not found ambiguity, finding it clear that the exclusion of "an insured" operated to exclude all others from coverage. *See, e.g., BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.,* 148 P.3d 832, 837 (Okla. 2005), *as corrected* (Oct. 30, 2006); *Canutillo Independent School Dist. v. National Union Fire Ins. Co. of Pittsburgh,* 99 F.3d 695, 707 (5th Cir. 1996); *Sales v. State Farm Fire & Casualty Co.,* 849 F.2d 1383, 1385 (11th Cir. 1988); *Amick v. State Farm Fire & Casualty,* 862 F.2d 704, 704–05 (8th Cir. 1988).

The text of the exclusion here, however, is different and clearer than in *Minkler* and in the above line of cases. Its phrase "any insured"—as opposed to "an insured"—specifically and unavoidably highlights that the application of the exclusion to either insured (Pollux or Larrivee) precludes coverage under the Policy for the other. It is hard to imagine a clearer way to capture this concept. Unsurprisingly, the overwhelming majority of courts to consider such an exclusion have held it unambiguous, and binding, even in the presence of a Separation of Insureds clause. *See, e.g., Argent,* 901 A.2d at 426; *Johnson v. Allstate Ins. Co.,* 687 A.2d 642, 645 (Me. 1997); *Chacon v. Am. Family Mut. Ins. Co.,* 788 P.2d 748, 752 (Colo. 1990).[6]

---

[6] While in a very small number of cases courts have reached the conclusion that a Separation of Insureds clause contravenes a contractual exclusion clause using the phrase "any insured," these cases are distinguishable. Most did not involve an unqualified exclusion of coverage for "any insured," as in Allianz's Policy here. *See, e.g., Am. Nat. Fire Ins. Co. v. Estate of Fournelle,* 472 N.W.2d 292, 295 (Minn. 1991) ("Contrary to [plaintiff's] assertion, the exclusion at issue does not apply to "any insured." Rather, it applies to "any insured *within the meaning of part a. or b. of Definition 3.*" The exclusion itself requires reference back to the definition of "insured," a

14

Opposing this outcome, Barba argues that thus interpreting the Owned Aircraft exclusion would eliminate most coverage under the policy for aviation operations. But that is wrong. The Policy defines "aviation operations" as "all operations arising from the ownership, maintenance or use of locations for aviation activities including that portion of roads or other accesses that adjoin these locations" and to include "all operations necessary or incidental to aviation activities." Policy at 2. The Owned Aircraft exclusion applies to a subset of such "aviation activities." It is addressed to certain—but not all—contexts involving the "use" of an aircraft. It does not negate the Policy's coverage of claims arising not out of the use of an aircraft, but out of locations at which aviation operations occur. For example, as Allianz notes, the Policy covers— and the Owned Aircraft exclusion does not negate coverage—for personal injuries such as slips and falls at premises owned, maintained or sued for the insured's aviation activities.

Barba also argues that the Court's construction would make the Separation of Insureds clause "meaningless" and superfluous. That, too, is wrong. As a review of the Policy reveals, the critical formulation—"any insured"— in the Court's analysis of the Owned Aircraft exclusion is anomalous within the Policy. In other clauses, the Policy instead excludes coverage for "the" insured or "an" insured. *See, e.g.*, Policy at 7 (excluding coverage for liability based on bodily injury to "an employee of *the* Insured arising out of . . .") (bolded emphasis in original removed, italicized emphasis added) (excluding coverage for liability incurred "in the course of: Any obligation of *the* Insured under a workers' compensation, disability benefits or unemployed

---

definition limiting the scope of coverage to those relatives of the named insured seeking coverage who are residents of that named insured's household."). Distinguishable on separate grounds is *Worcester Mut. Ins. Co. v. Marnell*, 496 N.E.2d 158, 162 (Mass. 1986). That case held that a Separation of Insureds clause in a motor vehicle insurance policy supervened the phrase "any insureds," but on the ground that any other interpretation "would render the entire severability of insurance clause meaningless." *Id.* at 162. As discussed *infra*, that is not the case here.

15

compensation law or any similar law") (emphasis added), 10 (excluding coverage for "Personal and Advertising Injury committed by *an* Insured") (bolded emphasis in original removed, italicized emphasis added), 19 ("No person or organization has a right under this policy: a. to join us as a party or otherwise bring us into a suit asking for damages from *an* Insured") (bolded emphasis in original removed, italicized emphasis added). Although this case does not present the issue, the Separation of Insureds clause, as in *Minkler*, may have purchase in connection with construing these exclusions. Giving the Owned Aircraft exclusion a construction consistent with its unambiguous text thus does no violence either to the Policy or the Separation of Insureds clause.

### C. Breach of Implied Duty of Good Faith and Fair Dealing

Under Alaska law, "in every insurance contract there is an implied covenant of good faith and fair dealing." *Hillman v. Nationwide Mut. Fire Ins. Co.*, 855 P.2d 1321, 1324 (Alaska 1993) (quoting *Gruenberg v. Aetna Ins. Co.*, 510 P.2d 1032, 1038 (Alaska 1973)). However, to establish a breach of this covenant, a plaintiff must show that the insurer acted "unreasonably and in bad faith" to breach its duty under an insurance policy. *Hillman*, 855 P.2d at 1324; *see also Great Divide Ins. Co. v. Bear Mt. Lodge, LLC*, 2016 U.S. Dist. LEXIS 23363 (D. Alaska Feb. 24, 2016) ("While the elements of this tort have not been defined with specificity, an insured must at least show that the insurer's actions or decisions were objectively unreasonable.") Here, however, as discussed, Allianz has not breached any duty under the Policy at all, let alone done so "unreasonably and in bad faith."

In apparent recognition of the possibility of this conclusion, Barba cites several Alaska cases[7] for the proposition that, under Alaska law, "where 'vagaries [of] law and fact' are sufficient to create the potential that an insured will incur covered liability, the insurer must defend and that failure to defend gives rise to an indemnity remedy, even it could later be proved that no coverage was due." Pl. Br. at 20. But these cases are inapposite because, for the reasons discussed, the Policy is not vague as to whether claims against Larrivee were excluded under the Owned Aircraft exclusion. Nor is there a viable claim that Allianz misled Pollux and Larrivee as to this point. On the contrary, Barba's Amended Complaint states clearly that Allianz notified Larrivee, in its April 16 letter, that it would not defend Larrivee from liability to Barba, based on the Owned Aircraft exclusion. *See* Am. Compl. ¶ 26.

Therefore, absent a viable claim that Allianz either breached the Policy or otherwise acted in bad faith, Barba's cause of action for breach of the duty of good faith and fair dealing, based on an asserted violation of Allianz's duty to defend Larrivee under the Policy, fails. This claim must be dismissed.

### D.     Alaska Unfair Claims Settlement Practices Act

Barba, finally, brings a claim under the Alaska Unfair Claims Settlement Practices Act, A.S. 21.36.125. This claim fails to state a claim, because no private right of action lies under that statute. *See, e.g., O.K. Lumber Co. v. Providence Washington Ins. Co.*, 759 P.2d 523, 527 (Alaska 1988) ("We therefore conclude that a third party claimant has no cause of action against an insurer under AS 21.36.125.")

---

[7] Specifically: *Makarka v. Great American Ins. Co.*, 14 P.3d 964, 969 (Alaska 2000) (citing *Continental Ins. Co. v. United States Fidelity & Guar. Co.*, 528 P.2d 430, 435 (Alaska 1974), and *Theodore v. Zurich General Accident & Liab. Ins. Co.*, 3 64 P.2d 51, 55-56 (Alaska 1961)).

17

## CONCLUSION

For the foregoing reasons, the Court dismisses Barba's Amended Complaint in its entirety for failure to state a claim. This dismissal is with prejudice, because Barba's ability to recover again under the Policy is precluded by unambiguous statutory language.

The Clerk of Court is thus respectfully directed to terminate the motion pending at Dkt. 10 and to close this case.

SO ORDERED.

                                                     *Paul A. Engelmayer*
                                                     Paul A. Engelmayer
                                                     United States District Judge

Dated: October 24, 2016
       New York, New York